## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA
450 Fifth Street, NW
Washington, D.C. 20530;

    *Plaintiff,*

    v.

CANON INC.
30-2, Shimomaruko 3-chome
Ohta-Ku, Tokyo
Japan;

and

TOSHIBA CORPORATION
1-1, Shibaura 1-chome
Minato-ku, Tokyo
Japan;

    *Defendants.*

## COMPLAINT FOR CIVIL PENALTIES FOR FAILURE TO COMPLY WITH THE PREMERGER NOTIFICATION AND WAITING REQUIREMENTS OF THE HART-SCOTT RODINO ACT

1.    In July 2015, Toshiba Corporation ("Toshiba") revealed that it had overstated its profits by billions of dollars. In an effort to avoid the consequences of those financial irregularities, Toshiba implemented a scheme to sell a subsidiary to Canon Inc. ("Canon"), while evading the United States' premerger-notification laws. In March 2016, Toshiba sold to Canon its subsidiary Toshiba Medical Systems Corporation ("TMSC"), and Canon paid Toshiba $6.1 billion, all before United States antitrust authorities were notified of the transaction. Toshiba's

sale of TMSC to Canon, prior to notifying antitrust authorities, violated the Hart-Scott-Rodino Antitrust Improvements Act of 1976, 15 U.S.C. § 18a ("HSR Act" or "Act"). Thus, the United States of America, Plaintiff, by its attorneys, acting under the direction of the Attorney General of the United States and at the request of the Federal Trade Commission, brings this civil antitrust action to obtain monetary relief in the form of civil penalties against Canon and Toshiba (collectively, "Defendants").

## INTRODUCTION

2.      The HSR Act is an essential part of modern antitrust enforcement.  It requires the buyer and the seller of voting securities or assets in excess of a certain value to notify the Department of Justice and the Federal Trade Commission *prior* to consummating the acquisition, and to observe a waiting period after the notification is filed.  Advance notification of significant transactions, and adherence to the waiting period, are the essential elements of the Act, providing the federal antitrust agencies with an opportunity to investigate and, when necessary, to seek an injunction to prevent the consummation of anticompetitive acquisitions.

3.      In 2015, Toshiba had put itself into a precarious financial position.  In July 2015, an independent investigation (triggered by an earlier investigation by financial regulators) publicly revealed long-running financial irregularities within Toshiba.  Toshiba was forced to restate its earnings for several years, and to incur a significant accounting charge for fiscal year 2015.  To shore up its financial statement, Toshiba decided to sell TMSC, a company that does substantial business in the United States.

4.      In December 2015, Toshiba began the process of selling TMSC.  Canon was one of the interested bidders.  Toshiba's desire to sell TMSC had a deadline:  Toshiba needed to

recognize the proceeds from the sale before the end of its fiscal year on March 31, 2016. Yet despite the public disclosure of financial irregularities in July 2015, Toshiba failed to resolve the TMSC sales process as the end of its fiscal year approached. As a result, in early 2016 Toshiba faced a time frame that would make it difficult, if not impossible, to file premerger notifications and receive the necessary premerger clearances in several jurisdictions, including the United States. Eventually, in early March 2016, Toshiba and Canon devised a scheme to enable Canon to acquire TMSC, allow Toshiba to recognize the proceeds from the sale by the close of its fiscal year, and avoid filing the notification and observing the waiting period required by the HSR Act.

5.       Pursuant to this scheme, Toshiba and Canon caused the creation of a special purpose company, MS Holding Corporation ("MS Holding"). MS Holding was the device that Toshiba and Canon used to evade the premerger-notification law.

6.       During March 15-17, 2016, in a multi-step process, Toshiba transferred ownership of TMSC to Canon, but in a way designed to evade notification requirements. First, Toshiba rearranged the corporate ownership structure of TMSC to make the scheme possible: it created new classes of voting shares, a single non-voting share with rights custom-made for Canon, and options convertible to ordinary shares. Second, Toshiba sold Canon TMSC's special non-voting share and the newly-created options in exchange for $6.1 billion, and at the same time transferred the voting shares of TMSC (a $6.1 billion company) to MS Holding in exchange for a nominal payment of nine hundred dollars. Later—in December 2016—Canon exercised its options and obtained formal control of TMSC's voting shares.

7.       Canon and Toshiba implemented this scheme to avoid observing the waiting period required by the HSR Act. If Canon had purchased all of TMSC's voting securities for

3

$6.1 billion, it would have required filing notification and observing the 30-day HSR waiting period, which Toshiba feared it could not accomplish by March 31, 2016. Instead, MS Holding paid only nine hundred dollars for the voting shares in TMSC, a company valued by Canon at $6.1 billion, while Canon nominally acquired only a non-voting share and options. Canon and Toshiba structured the transaction in such a way that, if these transactions were not part of a larger scheme, they would not require notification and observation of the HSR waiting period.

8.      This scheme masked the true nature of the acquisition. When Toshiba sold its interests in TMSC, while nominal voting-share ownership was divested by Toshiba and passed to MS Holding, true beneficial ownership passed to Canon. MS Holding bore no risk of loss, and no meaningful benefit of gain, for any decrease or increase in TMSC's value. Rather, it was Canon which bore that risk or would realize any potential gain from TMSC's operations. MS Holding merely served to temporarily hold TMSC voting securities for Canon's benefit. Therefore, Canon became the owner of TMSC in March 2016 when it paid Toshiba the $6.1 billion purchase price for the company.

9.      Defendants violated the HSR Act's notice and waiting requirements when Canon acquired ownership of TMSC on March 17, 2016. The court should assess each Defendant a civil penalty of at least $6,360,000 for this scheme to avoid the HSR Act's requirements.

## JURISDICTION AND VENUE

10.      This Court has jurisdiction over the Defendants and over the subject matter of this action pursuant to Section 7A(g) of the Clayton Act, 15 U.S.C. § 18a(g), and 28 U.S.C. §§ 1331, 1337(a), 1345, and 1355.

11.      Venue is proper in this District under 28 U.S.C. §§ 1391(b)(1), (b)(2), (b)(3),

(c)(2), (c)(3), and 15 U.S.C. § 22.  A substantial part of the omission or events giving rise to the

claim occurred within this District; to the extent that Canon Inc. and Toshiba Corporation are

alien corporations they may be properly sued in this District; and Defendants and other parties to

the transaction (including at least Canon U.S.A., Inc.) can be found or transact business in this

District.

## THE DEFENDANTS

12.    Defendant Canon is a corporation organized under the laws of Japan, with its

principal office and place of business at 30-2, Shimomaruku 3-chome, Ohta-Ku, Tokyo, Japan.

13.    Defendant Toshiba is a corporation organized under the laws of Japan, with its

principal office and place of business at 1-1, Shibaura 1-chome, Minato-ku, Tokyo, Japan.

14.    Defendants are engaged in commerce, or in activities affecting commerce, within

the meaning of Section 1 of the Clayton Act, 15 U.S.C. § 12, and Section 7A(a)(1) of the

Clayton Act, 15 U.S.C. §18a(a)(1).

## OTHER ENTITIES

15.    Toshiba Medical Systems Corporation ("TMSC") is a corporation organized

under the laws of Japan, with its principal office and place of business at 1385, Shimoishigami,

Otawara-shi, Tochigi 324-8550, Japan.  TMSC is engaged in commerce, or in activities affecting

commerce, within the meaning of Section 1 of the Clayton Act, 15 U.S.C. § 12, and Section

7A(a)(1) of the Clayton Act, 15 U.S.C. § 18a(a)(1).  Prior to March 17, 2016, TMSC was a

wholly-owned subsidiary of Toshiba.  At all times relevant to this complaint, TMSC had sales in

or into the United States of approximately $280 million.

16.    MS Holding Corporation ("MS Holding") is a corporation organized under the

laws of Japan, with its principal office and place of business at 6-10-1 Roppongi, Minato-ku, Tokyo, Japan. Defendants Canon and Toshiba directed their law firms to have MS Holding created for the specific purpose of acquiring and holding certain of TMSC's shares pending antitrust clearance for Canon's proposed acquisition of TMSC.

17.    Canon U.S.A., Inc. is a wholly-owned subsidiary of Canon with its headquarters in Melville, New York. Canon U.S.A., Inc. conducts sales and marketing of Canon products in the Americas, including the District of Columbia. Canon U.S.A., Inc. participated in the transaction at issue by receiving from Toshiba a minority share of the options to acquire TMSC voting securities, which were used as part of the scheme to transfer TMSC to Canon, and committing to pay Toshiba for such options.

## BACKGROUND

### A.    The Hart-Scott-Rodino Antitrust Improvements Act and Rules

18.    The HSR Act requires certain acquiring persons and certain persons whose voting securities or assets are acquired both to file notifications with the federal antitrust agencies and to observe a waiting period before consummating certain acquisitions. *See* 15 U.S.C. § 18a(a). The required notifications to the federal antitrust agencies must be delivered to the District of Columbia offices of each agency. These notification and waiting period requirements apply to acquisitions that meet the HSR Act's dollar-value thresholds, which are adjusted annually. At all times relevant to this complaint, the HSR Act's notification and waiting period requirements applied to qualifying transactions involving foreign companies which made more than $78.2 million of sales in or into the United States. TMSC made at least $280 million of sales in or into the United States during its 2015 fiscal year.

6

19.     Pursuant to Section (d)(2) of the HSR Act, 15 U.S.C. § 18a(d)(2), the Federal Trade Commission promulgated rules to carry out the purpose of the HSR Act. 16 C.F.R. §§ 801-803 ("HSR Rules").

20.     Parties may not structure transactions for the purpose of avoiding the HSR Act. Section 801.90 of the HSR Rules, 16 C.F.R. § 801.90, provides that "[a]ny transaction(s) or other device(s) entered into or employed for the purpose of avoiding the obligation to comply with the requirements of the act shall be disregarded, and the obligation to comply shall be determined by applying the act and these rules to the substance of the transaction."

21.     Section 801.2(a) of the HSR Rules, 16 C.F.R. § 801.2(a), defines an acquiring person: "Any person which, as a result of an acquisition, will hold voting securities or assets, either directly or indirectly, or through fiduciaries, agents, or other entities acting on behalf of such person, is an acquiring person."

22.     Section 801.1(c) of the HSR Rules, 16 C.F.R. § 801.1(c), provides that one holds voting securities if she has beneficial ownership: "the term *hold* (as used in the terms *hold(s)*, *holding, holder* and *held*) means beneficial ownership, whether direct, or indirect through fiduciaries, agents, controlled entities or other means." (emphasis in original). "[T]he existence of beneficial ownership is to be determined in the context of particular cases with reference to the person or persons that enjoy the indicia of beneficial ownership." 43 Fed. Reg. 33,458 (July 31, 1978). These indicia include (1) the right to any increase in value or dividends, (2) the risk of loss of value, (3) the right to vote or determine who may vote the stock, and (4) investment discretion, including the power to dispose of the stock. *Id.*

23.     In summary, under the HSR Rules, (a) if parties structure a transaction "for the

purpose of avoiding" the HSR Act's requirements, then determining whether an HSR notification should have been filed, and by whom, is based on an analysis of the "substance of the transaction," as opposed to the form of the avoidance scheme; and (b) in carrying out this notification analysis, identifying the acquiring person (with the associated HSR notification and waiting period obligations) involves an assessment of who, upon completion of the transaction, "enjoy[ed] the indicia of beneficial ownership."

**B.    Canon and Toshiba's HSR Avoidance Scheme**

24.    In late February 2016, Toshiba and Canon were actively negotiating the sale of TMSC.  Rather than complete their negotiations in time to allow compliance with regulatory requirements, the firms decided instead to devise a way to allow Toshiba to recognize the profits from its sale of TMSC by its fiscal year end on March 31, 2016 without complying with HSR requirements.   Toshiba and Canon jointly decided to restructure TMSC's securities and to sell TMSC to Canon through the device of MS Holding, a newly-formed special purpose vehicle which they had created specifically for this transaction. This scheme allowed Toshiba to relinquish all ownership rights in TMSC and recognize the entire proceeds of the TMSC sale prior to March 31, 2016 and delayed Canon's filing of premerger notification for its acquisition of TMSC.

25.    By early March 2016, Toshiba and Canon agreed to the following transaction structure, which they ultimately executed:

a.    Toshiba and Canon directed their law firms to have a third law firm form MS Holding, a special purpose vehicle created solely to hold temporarily the voting shares of TMSC, pending antitrust clearance of Canon's acquisition of TMSC;

8

b.      Toshiba revised the corporate ownership structure of TMSC (its wholly-owned subsidiary) in a way that would permit ownership rights of TMSC to be split. After the revision, Toshiba owned:

1) 20 Class A voting shares of TMSC;

2) 1 Class B non-voting share of TMSC; and

3) 100 options to acquire 134,980,000 TMSC "ordinary shares" (which remained unissued until step "e" below);

c.      MS Holding paid Toshiba approximately nine hundred dollars for the 20 Class A voting shares.  MS Holding thus nominally gained temporary ownership of a business valued by Canon at approximately $6.1 billion;

d.      Canon and Canon U.S.A., Inc., paid Toshiba approximately $6.1 billion for the 1 Class B non-voting share and for the 100 options to acquire 134,980,000 TMSC's "ordinary shares" that it intended to exercise once the TMSC sale had cleared antitrust review in the necessary jurisdictions.  The exercise price on each option was ¥1, for a total of ¥100, or approximately one dollar, to be paid to TMSC upon exercise of the options.  The "ordinary shares" remained unissued until Canon and Canon U.S.A. exercised their options; and

e.      Later, after HSR notification had been made and the waiting period had passed, Canon and Canon U.S.A., Inc., exercised their options (for a total exercise price of about one dollar) and so acquired the 134,980,000 TMSC "ordinary shares";

f.      After Canon and Canon U.S.A., Inc., exercised their options, TMSC bought out MS Holding's 20 Class A shares at a fixed price that did not vary depending

9

on the financial performance of TMSC during the period MS Holding held the Class A shares.

26.     While the motive of selling TMSC was to shore up Toshiba's financial statement, the purpose of the unusual transaction structure selected by Canon and Toshiba was to avoid the HSR Act's waiting period and complete the sale of TMSC prior to March 31, 2016.  By their own admission, Canon and Toshiba believed that Canon could not acquire TMSC outright because "it simply was not possible to complete a significant acquisition of TMSC voting securities before the end of Toshiba's fiscal year due to the review periods under various merger control laws."

## C.     Canon—not MS Holding—Acquired Beneficial Ownership of TMSC from Toshiba

27.     Because Canon and Toshiba chose to structure the sale of TMSC as an HSR avoidance scheme, determining the proper acquiring person for HSR notification purposes requires an analysis of the substance of the transaction to identify to whom passed beneficial ownership of TMSC.

28.     Toshiba and Canon, acting at times through their respective law firms, implemented their scheme for the sale of TMSC as follows:

        a.     On March 5, 2016, Toshiba and Canon jointly approached TMI Associates ("TMI"), a Japanese law firm, to consult on the formation of the special purpose vehicle (which became MS Holding upon its creation);

        b.     On March 6, 2016, Toshiba and Canon met with TMI regarding the formation of the special purpose vehicle (which became MS Holding) to consist of three principals/shareholders:  a business leader, an attorney, and an accountant;

10

c.       On or about March 6, 2016, advisors for Canon and Toshiba put together a list of possible accountants to be one of the other principals of MS Holding.  The list included Mr. Motoharu Yokose, who became a principal of MS Holding;

d.       On March 7, 2016, Toshiba and Canon cleared Mr. Shuichi Yoshikai, a lawyer at TMI, as a shareholder and principal of MS Holding;

e.       On March 8, 2016, Toshiba and Canon approved the formation documents of MS Holding, having previously provided comments and suggested changes to the drafts of the formation documents;

f.       On March 8, 2016, Toshiba and Canon both participated in briefing Mr. Kenji Miyahara who became an MS Holding principal on March 11, 2016;

g.       On March 8, 2016, Toshiba and Canon both participated in briefing Mr. Yokose who became an MS Holding principal on March 11, 2016;

h.       On March 8, 2016, MS Holding was incorporated with three shares and a total capital of approximately three hundred dollars;

i.       On March 15, 2016, Toshiba formally changed the corporate ownership structure of TMSC, with the agreement of Canon.  Prior to the transaction, TMSC had authorized a single class of 134,980,060 common (voting) shares, all of which was held by Toshiba.  In order to facilitate the transaction, Toshiba caused TMSC to authorize 20 Class A voting shares, 1 Class B non-voting share, 134,980,000 "ordinary" shares, and 134,980,060 "Class C" shares.  Toshiba converted its 134,980,060 common shares into "Class C" shares, and transferred all such Class C shares to TMSC in exchange for (i) the 20 Class A shares; (ii) the single Class B non-voting share; and (iii) 100 options to

11

acquire 134,980,000 "ordinary" shares.  The change in corporate ownership structure thus resulted in TMSC holding 134,980,060 of its own Class C shares, and 134,980,000 of its own "ordinary" shares, while Toshiba held 20 Class A shares, the single Class B non-voting share, and 100 options to acquire the 134,980,000 "ordinary" shares.

j.      On March 17, 2016, Toshiba and Canon executed the agreement ("acquisition agreement") pursuant to which Canon and Canon U.S.A., Inc., agreed to pay Toshiba approximately $6.1 billion to acquire TMSC's single Class B non-voting share and 100 options to acquire 134,980,000 "ordinary" voting shares.  According to the terms of the acquisition agreement, Canon and Canon U.S.A., Inc.'s payment of $6.1 billion was non-refundable, even if Canon and Canon U.S.A., Inc.'s exercise of the TMSC options was later blocked as a result of antitrust review;

k.      On the same day, March 17, 2016, Toshiba and MS Holding executed an agreement whereby MS Holding acquired the 20 Class A voting shares for approximately nine hundred dollars.  Prior to this, Canon had provided comments to the drafts of the agreement between Toshiba and MS Holding;

l.      On or about December 19, 2016, after obtaining the necessary antitrust clearances, Canon exercised its options to acquire the "ordinary" shares; and

m.      On or about December 21, 2016, TMSC acquired the 20 Class A shares from MS Holding, and MS Holding had no further ownership interest in or involvement with TMSC.

29.    As of March 17, 2016, Toshiba no longer had any interest in, ownership rights in, or control over TMSC.  Canon and Canon U.S.A., Inc.'s payment of $6.1 billion and MS

Holding's payment of nine hundred dollars was all the proceeds it would receive for its interests in TMSC. Toshiba would not benefit in any way from the financial performance of TMSC after March 17, 2016. That same day, Canon issued a press release stating that it had concluded a share transfer agreement with Toshiba concerning the acquisition of TMSC shares "to make TMSC a Canon subsidiary."

30.     The true substance of the transactions described in Paragraph 28 was Canon's acquisition of beneficial ownership of TMSC on March 17, 2016 for $6.1 billion.

31.     At all times relevant to this complaint, MS Holding was not an entity independent of Canon. Canon exercised direction and control over MS Holding during its formation. Canon caused the creation of MS Holding; it participated in the selection of the principals of MS Holding; it briefed the proposed principals of MS Holding about the transaction; it participated in the drafting of the formation documents of MS Holding; it commented on the appropriateness of the name MS Holding; it reviewed, commented on, and approved the share transfer agreement between MS Holding and Toshiba; and it commented on draft questions and answers regarding MS Holding.

32.     MS Holding had no meaningful risk of loss or benefit of gain in connection with its ownership of the Class A shares. It was to be paid a fixed amount that did not go up or down depending on the financial performance of TMSC.

33.     MS Holding did not act as an independent owner of TMSC during the period it nominally controlled TMSC through its ownership of the Class A shares. Because it existed precisely to be bought out after Canon exercised its options for the "ordinary" voting shares at a fixed price, MS Holding had no incentive to maintain the long term viability of TMSC.

13

Accordingly, if MS Holding had been a truly independent owner of TMSC, its economic self-interest would have been to take as much of the proceeds out of TMSC as it could prior to Canon exercising the options for the "ordinary" shares. Despite this economic self-interest, MS Holding made no efforts to sell any of TMSC's assets and declared dividends that amounted to only a small fraction of the profits earned by TMSC during the period of its nominal control.

34.     Neither the Defendants nor the principals of MS Holding expected MS Holding to be involved in the operation of TMSC during the period that MS Holding nominally controlled the Class A shares. Indeed, Canon itself has admitted that "TMSC's management board ran TMSC's day-to-day business during the time MS Holding" controlled the Class A shares. This was consistent with Defendants' choice of a corporate form for MS Holding, as "under Japanese law for the type of stock company in which MS Holding was formed, TMSC's shareholders are not expected or required to be involved in the operation of TMSC's day-to-day business."

## VIOLATION ALLEGED

35.     Plaintiff alleges and incorporates paragraphs 1 through 34 as if set forth fully herein.

36.     Canon's acquisition of TMSC from Toshiba on March 17, 2016, was subject to the notification and waiting period requirements of the HSR Act and the regulations promulgated thereunder. 16 C.F.R. § 800 *et. seq.*

37.     Defendants did not comply with the notification and waiting period requirements of the HSR Act and regulations. Although Defendant Canon and MS Holding both filed HSR Act notifications on April 26, 2016 for the exercise of the options to acquire the TMSC "ordinary" shares, these filings were not timely or effective because the transfer of beneficial

14

ownership to Canon from Toshiba had occurred in March 2016. Moreover, Toshiba did not make a filing in connection with the April 26, 2016 notifications, and thus failed to provide information that it had relevant to the transaction.

38.     On July 22, 2016, Canon and Toshiba each amended, under protest, the original HSR filings made by Canon and MS Holding to substitute Toshiba as the acquired person in the sale of TMSC. The waiting period on the amended filings expired on August 22, 2016.

39.     The Defendants were each in violation of the HSR Act each day during the period beginning on March 17, 2016, and ending on August 22, 2016.

40.     Section 7A(g)(1) of the Clayton Act, 15 U.S.C. § 18a(g)(1), provides that any person, or any officer, director, or partner thereof, who fails to comply with any provision of the HSR Act is liable to the United States for a civil penalty for each day during which such person is in violation. For violations occurring on or after November 2, 2015 and assessed after August 1, 2016, the maximum amount of civil penalty is $40,000 per day, pursuant to the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. 114-74, § 701 (further amending the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461 note), and Federal Trade Commission Rule 1.98, 16 C.F.R. § 1.98, 81 Fed. Reg. 42,476 (June 30, 2016). As of February 14, 2019, the penalty was further increased to $42,530 per day for civil penalties assessed after that date. 84 Fed. Reg. 3980 (Feb. 14, 2019).

## REQUEST FOR RELIEF

Wherefore, the Plaintiff requests:

1.     That the Court adjudge and decree that Defendants violated the HSR Act, 15 U.S.C. § 18a, and that Defendants were in violation of the Act on each day of the period from

March 17, 2016, through August 22, 2016;

      2.      That the Court order each Defendant to pay to the United States at least

$6,360,000, or the maximum civil penalty as provided by the HSR Act, 15 U.S.C. § 18a(g)(1),

the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. 114-74,

§ 701 (further amending the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C.

§ 2461 note), Federal Trade Commission Rule 1.98, 16 C.F.R. § 1.98, 84 Fed. Reg. 3980 (Feb.

14, 2019);

      3.      That the Court order such other and further relief as the Court may deem just and

proper; and

      4.      That the Court award the Plaintiff its costs of this suit.

Dated: _____

Respectfully submitted,

FOR PLAINTIFF UNITED STATES OF AMERICA:

MAKAN DELRAHIM
(D.C. Bar #457795)
Assistant Attorney General for Antitrust

BERNARD A. NIGRO, JR.
(D.C. Bar #412357)
Deputy Assistant Attorney General

PATRICIA A. BRINK
Director of Civil Enforcement

CRAIG W. CONRATH
Director of Litigation

DANIEL E. HAAR
Acting Chief, Competition Policy and
Advocacy Section

United States Department of Justice
Antitrust Division
950 Pennsylvania Ave, N.W.
Washington, DC 20530
Telephone:  (202) 532-4560
Facsimile:  (202) 616-2645

DANIEL J. MATHESON (D.C. Bar #502490)
KENNETH A. LIBBY
JENNIFER LEE
JONATHAN LASKEN (D.C. Bar #997251)
Special Attorneys by appointment
Federal Trade Commission
Bureau of Competition
400 Seventh Street, S.W.
Washington, DC 20024
Telephone:  (202) 326-2075
Email:  dmatheson@ftc.gov

KARA KURITZ (D.C. Bar #991349)
United States Department of Justice
Antitrust Division
450 Fifth Street, N.W.
Washington, DC 20530

17

## CIVIL COVER SHEET

JS-44 (Rev. 6/17 DC)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| UNITED STATES OF AMERICA<br>c/o Department of Justice | CANON INC.<br>TOSHIBA CORPORATION |

| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____<br>(EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT 99999<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
|---|---|

| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| Daniel J. Matheson, Kenneth A. Libby, Jennifer Lee<br>Federal Trade Commission<br>400 Seventh Street S.W., Washington DC 20024<br>(202) 326-2075 | Jeff L. White<br>Weil, Gotshal & Manges LLP<br>Perry A. Lange<br>Wilmer Cutler Pickering Hale and Dorr LLP |

### II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ( ●) 1 U.S. Government Plaintiff
- ( ○) 2 U.S. Government Defendant
- ( ○) 3 Federal Question (U.S. Government Not a Party)
- ( ○) 4 Diversity (Indicate Citizenship of Parties in item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

### IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place an X in one category, A-N, that best represents your Cause of Action and one in a corresponding Nature of Suit)

**( ● ) A. Antitrust**
- [x] 410 Antitrust

**( ○ ) B. Personal Injury/Malpractice**
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Medical Malpractice
- [ ] 365 Product Liability
- [ ] 367 Health Care/Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Product Liability

**( ○ ) C. Administrative Agency Review**
- [ ] 151 Medicare Act

**Social Security**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**Other Statutes**
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 890 Other Statutory Actions (If Administrative Agency is Involved)

**( ○ ) D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**( ○ ) E. General Civil (Other)          OR          ( ○ ) F. Pro Se General Civil**

**Real Property**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent, Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**Personal Property**
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**Bankruptcy**
- [ ] 422 Appeal 27 USC 158
- [ ] 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- [ ] 535 Death Penalty
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Conditions
- [ ] 560 Civil Detainee – Conditions of Confinement

**Property Rights**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent – Abbreviated New Drug Application
- [ ] 840 Trademark

**Federal Tax Suits**
- [ ] 870 Taxes (US plaintiff or defendant)
- [ ] 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**Other Statutes**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 430 Banks & Banking
- [ ] 450 Commerce/ICC Rates/etc.
- [ ] 460 Deportation

- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions
- [ ] 470 Racketeer Influenced & Corrupt Organization
- [ ] 480 Consumer Credit
- [ ] 490 Cable/Satellite TV
- [ ] 850 Securities/Commodities/Exchange
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes
- [ ] 890 Other Statutory Actions (if not administrative agency review or Privacy Act)

| ○ **G.  Habeas Corpus/ 2255** | ○ **H.  Employment Discrimination** | ○ **I.  FOIA/Privacy Act** | ○ **J.  Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus – General<br>☐ 510 Motion/Vacate Sentence<br>☐ 463 Habeas Corpus – Alien Detainee | ☐ 442 Civil Rights – Employment (criteria: race, gender/sex, national origin, discrimination, disability, age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loan (excluding veterans) |
| ○ **K.  Labor/ERISA (non-employment)** | ○ **L.  Other Civil Rights (non-employment)** | ○ **M.  Contract** | ○ **N.  Three-Judge Court** |
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 740 Labor Railway Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 440 Other Civil Rights<br>☐ 445 Americans w/Disabilities – Employment<br>☐ 446 Americans w/Disabilities – Other<br>☐ 448 Education | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights – Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi-district Litigation   ○ 7 Appeal to District Judge from Mag. Judge   ○ 8 Multi-district Litigation – Direct File

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
15 U.S.C. SECTION 18a: Failure to comply with the requirements of the Hart-Scott-Rodino Antitrust Improvements Act

| **VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | DEMAND $ 5,000,000<br>JURY DEMAND: | Check YES only if demanded in complaint<br>YES ☐   NO ☒ |
|---|---|---|---|

| **VIII. RELATED CASE(S) IF ANY** | (See instruction) | YES ☐   NO ☒ | If yes, please complete related case form |
|---|---|---|---|

DATE: June 10, 2019   SIGNATURE OF ATTORNEY OF RECORD  *Jennath A Libby*

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
**Authority for Civil Cover Sheet**

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and services of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the cover sheet.

I.     COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff if resident of Washington, DC, 88888 if plaintiff is resident of United States but not Washington, DC, and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of the case.

VI.   CAUSE OF ACTION: Cite the U.S. Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASE(S), IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>     *Plaintiff,*<br><br>    v.<br><br>CANON INC.<br><br>and<br><br>TOSHIBA CORPORATION<br><br>     *Defendants.* | Civil Action No. |

## STIPULATION

It is stipulated by and between the undersigned parties, by their respective attorneys, that:

(1)  The parties consent that the Court may file and enter a Final Judgment in the form attached as Exhibit A, on the Court's own motion or on the motion of any party at any time after compliance with the requirements of the Antitrust Procedures and Penalties Act ("APPA") (15 U.S.C. § 16), and without further notice to any party or other proceedings, if the United States has not withdrawn its consent, which it may do at any time before the entry of the proposed Final Judgment by serving notice of its withdrawal on Defendants Canon Inc. and Toshiba Corporation (collectively, "Defendants") and filing that notice with the Court;

(2)  Defendant Canon Inc. waives any objection to venue or jurisdiction for purposes of this action and authorizes Weil, Gotshal & Manges LLP to accept service of all process in this matter on its behalf;

1

(3)  Defendant Toshiba Corporation waives any objection to venue or jurisdiction for purposes of this action and authorizes Wilmer Cutler Pickering Hale and Dorr LLP to accept service of all process in this matter on its behalf;

(4)  Defendants agree to arrange, at their expense, publication of the newspaper notice required by the APPA, which shall be drafted by the United States in its sole discretion. The publication shall be arranged no later than five (5) business days after Defendants' receipt from the United States of the text of the notice and the identity of the newspaper within which the publication shall be made. Defendants shall promptly send to the United States (1) confirmation that publication of the newspaper notice has been arranged, and (2) the certification of the publication prepared by the newspaper within which the notice was published;

(5)  Defendants shall abide by and comply with the provisions of the proposed Final Judgment pending entry of the Final Judgment by the Court, or until expiration of time for all appeals of any Court ruling declining entry of the proposed Final Judgment, and shall, from the date of signing this Stipulation by the parties, comply with all terms and provisions of the proposed Final Judgment. The United States shall have the full rights and enforcement powers in the proposed Final Judgment, including Section VIII, as though they were in full force and effect as the Final Order of the Court;

(6)  This Stipulation shall apply with equal force and effect to any amended proposed Final Judgment agreed upon in writing by the parties and submitted to the Court;

(7)  In the event the United States has withdrawn its consent or if the proposed Final Judgment is not entered pursuant to this Stipulation, and the time has expired for all appeals of any Court ruling declining entry of the proposed Final Judgment, and the Court has not otherwise

2

ordered continued compliance with the terms and provisions of the proposed Final Judgment, then the parties are released from all further obligations under this Stipulation, and the making of this Stipulation shall be without prejudice to any party in this or any other proceeding;

(8) The Defendants represent that the actions they are required to perform pursuant to the proposed Final Judgment can and will be performed, and that the Defendants will later raise no claim of mistake, hardship, or difficulty of compliance as grounds for asking the Court to modify any of the provisions contained therein; and

(9) The entry of the Final Judgment in accordance with this Stipulation settles, discharges, and releases any and all claims of the United States and the Federal Trade Commission for civil penalties and equitable relief pursuant to Section 7A of the Clayton Act, 15 U.S.C. § 18a, against Defendants for failure to comply with Section 7A of the Clayton Act, 15 U.S.C. § 18a, in connection with Defendant Canon Inc.'s acquisition of Toshiba Medical Systems Corporation from Defendant Toshiba Corporation in 2016.

**FOR THE DEFENDANTS:**

Canon Inc.

By: _____

Jeff L. White
D.C. Bar No. 495619
Weil Gotshal & Manges LLP
2001 M Street, NW #600
Washington, D.C.  20036
jeff.white@weil.com

Counsel for Defendant Canon Inc.

Toshiba Corporation

By: _____

Perry A. Lange
D.C. Bar No. 494339
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Ave., NW
Washington, DC 20006
perry.lange@wilmerhale.com

Counsel for Defendant Toshiba Corporation

Dated:  June 10, 2019

4

**FOR THE PLAINTIFF:**

Makan Delrahim
D.C. Bar No. 457795
Assistant Attorney General
Department of Justice
Antitrust Division
Washington, D.C.  20530
(202) 514-2401

D. Bruce Hoffman
D.C. Bar No. 495385
Director
Bureau of Competition
Federal Trade Commission
Washington, D.C. 20580
(202) 326-3070

Marian Bruno
D.C. Bar No. 414126
Deputy Director

Kenneth A. Libby
Attorney
(202) 326-2694

Jennifer Lee
Attorney

5

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>*Plaintiff,*<br><br>v.<br><br>CANON INC.<br><br>and<br><br>TOSHIBA CORPORATION<br><br>*Defendants*. | Civil Action No. |

## [PROPOSED] FINAL JUDGMENT

WHEREAS the United States of America filed its Complaint on [DATE], 2019, alleging that Defendants Canon Inc. and Toshiba Corporation violated Section 7A of the Clayton Act, 15 U.S.C. § 18a, commonly known as the Hart-Scott-Rodino Antitrust Improvements Act of 1976 (the "Hart-Scott-Rodino Act"), and the United States and Defendants Canon Inc. and Toshiba Corporation, by their respective attorneys, have consented to the entry of this Final Judgment without trial or adjudication of any issue of fact or law, and without this Final Judgment constituting any evidence against or an admission by any party regarding any issue of fact or law;

AND WHEREAS Defendants agree to be bound by the provisions of this Final Judgment pending its approval by the Court;

1

NOW, THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon the consent of the parties hereto, it is ORDERED, ADJUDGED, AND DECREED:

## I. JURISDICTION

The Court has jurisdiction over the subject matter of this action.  The Defendants consent solely for the purpose of this action and the entry of this Final Judgment that this Court has jurisdiction over each of the parties to this action.  The Complaint states a claim upon which relief may be granted against the Defendants under Section 7A of the Clayton Act, 15 U.S.C. § 18a.

## II. DEFINITIONS

A. "Canon Inc." means Canon Inc., a corporation organized under the laws of Japan, with its principal office and place of business at 30-2, Shimomaruko 3-chome, Ohta-ku, Tokyo, Japan, including its successors and assigns, and its subsidiaries and divisions.

B. "Toshiba Corporation" means Toshiba Corporation, a corporation organized under the laws of Japan, with its principal office and place of business at 1-1, Shibaura 1-chome, Minato-ku, Tokyo, Japan, including its successors and assigns, and its subsidiaries and divisions.

C. "Voting Securities" shall have the same meaning as defined in the HSR Act and Regulations promulgated thereunder, 16. C.F.R. § 801(f)(1)(i).

D. "Regulation" means any rule, regulation, statement, or interpretation under the Hart-Scott-Rodino Act that has legal effect with respect to the implementation or

2

application of the Hart-Scott-Rodino Act or any section or subsection within 16

C.F.R. §§ 801-803.

E.  "Significant Sales" means sales in excess of $90 million in the most recent fiscal

year.

## III. APPLICABILITY

This Final Judgment applies to Canon Inc. and Toshiba Corporation, as defined above,

and all other persons in active concert or participation with any of them who receive actual

notice of this Final Judgment by personal service or otherwise.

## IV. CIVIL PENALTY

A.  Judgment is hereby entered in this matter in favor of Plaintiff and against Defendants,

and, pursuant to Section 7A(g)(1) of the Clayton Act, 15 U.S.C. § 18a(g)(1), the Debt Collection

Improvement Act of 1996, Pub. L. 104-134 § 31001(s) (amending the Federal Civil Penalties

Inflation Adjustment Act of 1990, 28 U.S.C. § 2461), the Federal Civil Penalties Inflation

Adjustment Act Improvements Act of 2015, Pub. L. 114-74 § 701 (further amending the Federal

Civil Penalties Inflation Adjustment Act of 1990), and Federal Trade Commission Rule 1.98, 16

C.F.R. § 1.98, 84 Fed. Reg. 3980 (February 14, 2019), each Defendant is hereby ordered to pay a

civil penalty in the amount of $2.5 million, for a total of $5 million.  Payment of the civil penalty

ordered hereby shall be made by wire transfer of funds or cashier's check.  If the payment is

made by wire transfer, Defendants shall contact Janie Ingalls of the Antitrust Division's Antitrust

Documents Group at (202) 514-2481 for instructions before making the transfer.  If the payment

is made by cashier's check, the check shall be made payable to the United States Department of

Justice and delivered to:

Janie Ingalls
United States Department of Justice
Antitrust Division, Antitrust Documents Group
450 5th Street, NW
Suite 1024
Washington, D.C.  20530

B.  Defendants shall pay the full amount of the civil penalty within thirty (30) days of

entry of this Final Judgment.  In the event of a default or delay in payment, interest at the rate of

eighteen (18) percent per annum shall accrue thereon from the date of the default or delay to the

date of payment.

## V. COMPLIANCE PROGRAM

A.  To ensure compliance with Section 7A of the Clayton Act, 15 U.S.C. § 18a, each

Defendant shall initiate and maintain a compliance program that shall include designating, within

thirty (30) days of the entry of this Final Judgment, a Compliance Officer with responsibility for

achieving compliance with Section 7A of the Clayton Act and identify to the United States his or

her name, business address, telephone number, and email address.  Within forty-five (45) days of

a vacancy in the Compliance Officer position, a Defendant shall appoint a replacement, and shall

identify to the United States the Compliance Officer's name, business address, telephone

number, and email address.  Defendants' initial or replacement appointments of Compliance

Officers are subject to the approval of the United States, in its sole discretion.

B.  The Compliance Officer for each Defendant shall institute a Hart-Scott-Rodino Act

compliance program for that Defendant's employees who have direct responsibility for or

authority over execution of acquisitions by that Defendant of (1) assets that generate Significant

Sales in or into the United States or (2) Voting Securities of an issuer that has Significant Sales

in or into the United States ("Relevant Employees").  The compliance program shall provide at

4

least two hours of training for each Relevant Employee (including, for the avoidance of doubt, any individual who becomes a Relevant Employee after entry of this Final Judgment) on the requirements of Section 7A of the Clayton Act, such training to be delivered by an attorney with expertise in United States antitrust law.  For each Defendant, the attorney conducting such training shall provide the Defendant's Compliance Officer with annual certification that he or she has the required expertise and has provided each Relevant Employee with the training described in this subsection.

C.  Each Defendant's Compliance Officer shall obtain, within six months after entry of this Final Judgment, and on an annual basis thereafter, on or before each anniversary of the entry of this Final Judgment, from each person identified in Section V.B of this Final Judgment, a certification that each such person has received the required two hours of Hart-Scott-Rodino Act training.

D.  Each Defendant's Compliance Officer shall communicate annually to Relevant Employees of the relevant Defendant that they may disclose to that Defendant's Compliance Officer, without reprisal, information concerning any potential violation of Section 7A of the Clayton Act.

E.  Each Defendant's Compliance Officer shall provide to the United States within six months after entry of this Final Judgment, and on an annual basis thereafter, on or before each anniversary of the entry of this Final Judgment, a written statement as to the fact and manner of Defendant's compliance with Section V of this Final Judgment.

## VI. COMPLIANCE INSPECTION

A.  For the purposes of determining or securing compliance with this Final Judgment, or of determining whether the Final Judgment should be modified or vacated, and subject to any legally-recognized privilege, from time to time authorized representatives of the United States, including agents and consultants retained by the United States, shall, upon written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, and on reasonable notice to Defendants, be permitted:

(1)     access during Defendants' office hours to inspect and copy, or at the option of the United States, to require Defendants to provide electronic copies of all books, ledgers, accounts, records, data, and documents in the possession, custody, or control of Defendants, relating to any matters contained in this Final Judgment; and

(2)     to interview, either informally or on the record, Defendants' officers, employees, or agents, who may have their individual counsel present, regarding such matters. The interviews shall be subject to the reasonable convenience of the interviewee and without restraint or interference by Defendants.

B.  Upon the written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, Defendants shall submit written reports or response to written interrogatories, under oath if requested, relating to any of the matters contained in this Final Judgment as may be requested.

C.  No information or documents obtained by the means provided in Section VI shall be divulged by the United States to any person other than an authorized representative of the executive branch of the United States, except in the course of legal proceedings to which the United States is a party (including grand jury proceedings), for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

6

D.  If at the time that Defendants furnish information or documents to the United States, Defendants represent and identify in writing the material in any such information or documents to which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, and Defendants mark each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," then the United States shall give Defendants ten (10) calendar days' notice prior to divulging such material in any legal proceeding (other than a grand jury proceeding).

## VII. RETENTION OF JURISDICTION

This Court retains jurisdiction to enable any of the parties to this Final Judgment to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify or terminate any of its provisions, to enforce compliance, and to punish violations of its provisions.

## VIII. ENFORCEMENT OF FINAL JUDGMENT

A.  The United States retains and reserves all rights to enforce the provisions of this Final Judgment, including the right to seek an order of contempt from the Court.  Defendants agree that in any civil contempt action, any motion to show cause, or any similar action brought by the United States regarding an alleged violation of this Final Judgment, the United States may establish a violation of the decree and the appropriateness of any remedy therefor by a preponderance of the evidence, and Defendants waive any argument that a different standard of proof should apply.

B.  The Final Judgment should be interpreted to give full effect to the procompetitive purposes of the antitrust laws, including Section 7A of the Clayton Act and Regulations

promulgated thereunder.  Defendants agree that they may be held in contempt of, and that the Court may enforce, any provision of this Final Judgment that, as interpreted by the Court in light of these procompetitive principles and applying ordinary tools of interpretation, is stated specifically and in reasonable detail, whether or not it is clear and unambiguous on its face.  In any such interpretation, the terms of this Final Judgment should not be construed against either party as the drafter.

C.  In any enforcement proceeding in which the Court finds that a Defendant has violated this Final Judgment, the United States may apply to the Court for a one-time extension of this Final Judgment for that Defendant, together with such other relief as may be appropriate.  In connection with any successful effort by the United States to enforce this Final Judgment against a Defendant, whether litigated or resolved prior to litigation, each Defendant agrees to reimburse the United States for the fees and expenses of its attorneys, as well as any other costs including experts' fees, incurred in connection with that enforcement effort, including in the investigation of the potential violation.

D.  For a period of four (4) years after the expiration of the Final Judgment pursuant to Section VIII, if the United States has evidence that a Defendant violated this Final Judgment before it expired, the United States may file an action against that Defendant in this Court requesting that the Court order (1) Defendant to comply with the terms of this Final Judgment for an additional term of at least four years following the filing of the enforcement action under this Section, (2) any appropriate contempt remedies, (3) any additional relief needed to ensure the Defendant complies with the terms of the Final Judgment, and (4) fees or expenses as called for in Section VIII.C.

## IX. EXPIRATION OF FINAL JUDGMENT

Unless this Court grants an extension, this Final Judgment shall expire three (3) years from the date of its entry if each Defendant has paid the civil penalty in full.

## X. COSTS

Each party shall bear its own costs of this action.

## XI. PUBLIC INTEREST DETERMINATION

Entry of this Final Judgment is in the public interest. The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including making copies available to the public of this Final Judgment, the Competitive Impact Statement, and any comments thereon and the United States' responses to comments. Based upon the record before the Court, which includes the Competitive Impact Statement and any comments and response to comments filed with the Court, entry of this Final Judgment is in the public interest.

Dated: _____

_____
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| *Plaintiff*, | |
| v. | Civil Action No. |
| CANON INC. | |
| and | |
| TOSHIBA CORPORATION | |
| *Defendants*. | |

**COMPETITIVE IMPACT STATEMENT**

Plaintiff United States of America ("United States"), pursuant to Section 2(b) of the

Antitrust Procedures and Penalties Act ("APPA"), 15 U.S.C. § 16(b)-(h), files this Competitive

Impact Statement relating to the proposed Final Judgment submitted for entry in this civil

antitrust proceeding.

**I.      NATURE AND PURPOSE OF THE PROCEEDING**

On June 10, 2019, the United States filed a Complaint against Defendants Canon Inc.

("Canon") and Toshiba Corporation ("Toshiba"), related to the acquisition of Toshiba Medical

Systems Corporation ("TMSC") by Canon from Toshiba on March 17, 2016 for approximately

$6.1 billion.  The Complaint alleges that Canon and Toshiba (collectively, "Defendants")

violated Section 7A of the Clayton Act, 15 U.S.C. § 18a, commonly known as the Hart-Scott-

Rodino Antitrust Improvements Act of 1976 (the "HSR Act").  The HSR Act provides that "no

person shall acquire, directly or indirectly, any voting securities or assets of any person"

exceeding certain thresholds until that person has filed pre-acquisition notification and report forms with the Department of Justice and the Federal Trade Commission (collectively, the "federal antitrust agencies" or "agencies") and the post-filing waiting period has expired. 15 U.S.C. § 18a(a). A key purpose of the notification and waiting period requirements is to protect consumers and competition from potentially anticompetitive transactions by providing the agencies an opportunity to conduct an antitrust review of proposed transactions before they are consummated.

The Complaint alleges that Defendant Canon acquired beneficial ownership of TMSC from Defendant Toshiba without making the required pre-acquisition HSR Act filings with the agencies and without observing the waiting period. The Complaint alleges that the price paid by Canon to Toshiba exceeded the then-existing threshold of $312.6 million for filing notification.

At the same time the Complaint was filed in the present action, the United States also filed a Stipulation and proposed Final Judgment that eliminates the need for a trial in this case. The proposed Final Judgment is designed to address the violation alleged in the Complaint, deter Defendants from future HSR Act violations, and deter violations by similarly situated entities in the future. Under the proposed Final Judgment, Defendants must each pay a civil penalty to the United States in the amount of $2.5 million (for a total of $5 million) and are subject to an injunction requiring them to establish procedures to prevent future violations.

The United States and Defendants have stipulated that the proposed Final Judgment may be entered after compliance with the APPA, unless the United States first withdraws its consent. Entry of the proposed Final Judgment would terminate this case, except that the Court would retain jurisdiction to construe, modify, or enforce the provisions of the proposed Final Judgment and punish violations thereof.

II.     **DESCRIPTION OF THE EVENTS GIVING RISE TO THE ALLEGED VIOLATION**

Canon is a Japanese corporation that sells a variety of products in or into the United States, including printing products, cameras, and medical imaging equipment.  Toshiba is also a Japanese corporation that sells a variety of products and services in or into the United States. TMSC was a wholly owned subsidiary of Toshiba that manufactured and sold medical imaging equipment worldwide, including into the United States.

As a result of accounting irregularities causing it to restate several years' worth of earnings, Toshiba needed to improve its balance sheet prior to the end of its fiscal year on March 31, 2016.  Accordingly, Toshiba decided to sell TMSC.  In December 2015, Toshiba started the process to sell TMSC.  Canon was one of the buyers interested in TMSC.  By the beginning of March 2016, Canon and Toshiba were actively negotiating the terms of the possible sale of TMSC to Canon.  At this point, Canon and Toshiba did not believe that they could file under the HSR Act and observe the waiting period and have the sale of TMSC close by March 31. Toshiba and Canon devised a scheme to enable Canon to acquire TMSC, allow Toshiba to recognize the proceeds from the sale by the close of its fiscal year, and avoid observing the waiting period required by the HSR Act.

Pursuant to this scheme, Toshiba and Canon caused the creation of a special purpose company, MS Holding Corporation ("MS Holding").  MS Holding was the device that Toshiba and Canon used to evade the HSR Act.  During March 15-17, 2016, in a multi-step process, Toshiba transferred ownership of TMSC to Canon in a manner designed to evade notification requirements.  First, Toshiba rearranged the corporate ownership structure of TMSC to make the scheme possible:  it created new classes of voting shares, a single non-voting share with rights custom-made for Canon, and options convertible to ordinary shares. Second, Toshiba sold Canon

TMSC's special non-voting share and the newly-created options in exchange for $6.1 billion, and at the same time transferred the voting shares of TMSC (a $6.1 billion company) to MS Holding in exchange for a nominal payment of nine hundred dollars.  Later—in December 2016—Canon exercised its options and obtained formal control of TMSC's voting shares.  This scheme masked the true nature of the acquisition.  When Toshiba sold its interests in TMSC, while nominal voting-share ownership was divested by Toshiba and passed to MS Holding, true beneficial ownership passed to Canon.  MS Holding bore no risk of loss, and no meaningful benefit of gain, for any decrease or increase in TMSC's value.  Rather, it was Canon which bore that risk or would realize any potential gain from TMSC's operations.  MS Holding merely served to temporarily hold TMSC voting securities for Canon's benefit.  Therefore, Canon became the owner of TMSC in March 2016 when it paid Toshiba the $6.1 billion purchase price for the company.

The transactions described above were subject to the notification and waiting periods of the HSR Act.  The HSR Act and the thresholds in effect during the time period relevant to this proceeding required that each Defendant file a notification and report form with the Department of Justice and the Federal Trade Commission and observe a waiting period before Canon acquired TMSC.

## III.    EXPLANATION OF THE PROPOSED FINAL JUDGMENT

The proposed Final Judgment imposes a $2.5 million civil penalty against each Defendant (a total of $5 million) and an injunction designed to address the violation alleged in the Complaint and deter Defendants and others from violating the HSR Act.  The United States adjusted the penalty downward from the maximum permitted under the HSR Act because Defendants are willing to resolve the matter by consent decree and avoid prolonged litigation.

The relief will have a beneficial effect on competition because the agencies will be properly notified of future acquisitions, in accordance with the law.  At the same time, neither the penalty nor the injunctive relief will have any adverse effect on competition.

## IV.  REMEDIES AVAILABLE TO POTENTIAL PRIVATE LITIGANTS

There is no private antitrust action for HSR Act violations; therefore, entry of the proposed Final Judgment will neither impair nor assist the bringing of any private antitrust action.

## V.  PROCEDURES AVAILABLE FOR MODIFICATION OF THE PROPOSED FINAL JUDGMENT

The United States and Defendants have stipulated that the proposed Final Judgment may be entered by the Court after compliance with the provisions of the APPA, provided that the United States has not withdrawn its consent.  The APPA conditions entry upon the Court's determination that the proposed Final Judgment is in the public interest.

The APPA provides a period of at least sixty (60) days preceding the effective date of the proposed Final Judgment within which any person may submit to the United States written comments regarding the proposed Final Judgment.  Any person who wishes to comment should do so within sixty (60) days of the date of publication of this Competitive Impact Statement in the *Federal Register*, or the last date of publication in a newspaper of the summary of this Competitive Impact Statement, whichever is later.  All comments received during this period will be considered by the United States Department of Justice, which remains free to withdraw its consent to the proposed Final Judgment at any time prior to the Court's entry of judgment. The comments and the response of the United States will be filed with the Court.  In addition, comments will be posted on the U.S. Department of Justice, Antitrust Division's internet website and, under certain circumstances, published in the *Federal Register*.  Written comments should

be submitted to:

> Kenneth A. Libby
> Special Attorney, United States
> c/o Federal Trade Commission
> 600 Pennsylvania Avenue, NW
> CC-8404
> Washington, DC 20580
> Email:  klibby@ftc.gov

The proposed Final Judgment provides that the Court retains jurisdiction over this action, and the parties may apply to the Court for any order necessary or appropriate for the modification, interpretation, or enforcement of the Final Judgment.

## VI.    ALTERNATIVES TO THE PROPOSED FINAL JUDGMENT

The United States considered, as an alternative to the proposed Final Judgment, a full trial on the merits against Defendants.  The United States is satisfied, however, that the proposed relief is an appropriate remedy in this matter.  Given the facts of this case, including Defendants' willingness to settle this matter, the United States is satisfied that the proposed civil penalty and injunction are sufficient to address the violation alleged in the Complaint and to deter violations by similarly situated entities in the future, without the time, expense, and uncertainty of a full trial on the merits.

## VII.   STANDARD OF REVIEW UNDER THE APPA FOR THE PROPOSED FINAL JUDGMENT

The Clayton Act, as amended by the APPA, requires that proposed consent judgments in antitrust cases brought by the United States be subject to a 60-day comment period, after which the court shall determine whether entry of the proposed Final Judgment "is in the public interest."  15 U.S.C. § 16(e)(1).  In making that determination, the court, in accordance with the statute as amended in 2004, is required to consider:

(A)    the competitive impact of such judgment, including termination of alleged

violations, provisions for enforcement and modification, duration of relief sought, anticipated effects of alternative remedies actually considered, whether its terms are ambiguous, and any other competitive considerations bearing upon the adequacy of such judgment that the court deems necessary to a determination of whether the consent judgment is in the public interest; and

(B)      the impact of entry of such judgment upon competition in the relevant market or markets, upon the public generally and individuals alleging specific injury from the violations set forth in the complaint including consideration of the public benefit, if any, to be derived from a determination of the issues at trial.

15 U.S.C. § 16(e)(1)(A) & (B).  In considering these statutory factors, the court's inquiry is necessarily a limited one as the government is entitled to "broad discretion to settle with the defendant within the reaches of the public interest."  *United States v. Microsoft Corp.*, 56 F.3d 1448, 1461 (D.C. Cir. 1995); *see generally United States v. SBC Commc'ns, Inc.*, 489 F. Supp. 2d 1 (D.D.C. 2007) (assessing public interest standard under the Tunney Act); *United States v. U.S. Airways Grp., Inc.*, 38 F. Supp. 3d 69, 75 (D.D.C. 2014) (explaining that the "court's inquiry is limited" in Tunney Act settlements); *United States v. InBev N.V./S.A.*, No. 08-1965 (JR), 2009 U.S. Dist. LEXIS 84787, at *3 (D.D.C. Aug. 11, 2009) (noting that the court's review of a consent judgment is limited and only inquires "into whether the government's determination that the proposed remedies will cure the antitrust violations alleged in the complaint was reasonable, and whether the mechanisms to enforce the final judgment are clear and manageable").

As the United States Court of Appeals for the District of Columbia Circuit has held, under the APPA a court considers, among other things, the relationship between the remedy secured and the specific allegations in the government's complaint, whether the decree is sufficiently clear, whether its enforcement mechanisms are sufficient, and whether the decree may positively harm third parties.  *See Microsoft*, 56 F.3d at 1458-62.  With respect to the adequacy of the relief secured by the decree, a court may not "engage in an unrestricted

evaluation of what relief would best serve the public." *United States v. BNS, Inc.*, 858 F.2d 456, 462 (9th Cir. 1988) (quoting *United States v. Bechtel Corp.*, 648 F.2d 660, 666 (9th Cir. 1981)); *see also Microsoft*, 56 F.3d at 1460-62; *United States v. Alcoa, Inc.*, 152 F. Supp. 2d 37, 40 (D.D.C. 2001); *InBev*, 2009 U.S. Dist. LEXIS 84787, at *3.  Instead:

> [t]he balancing of competing social and political interests affected by a proposed antitrust consent decree must be left, in the first instance, to the discretion of the Attorney General.  The court's role in protecting the public interest is one of insuring that the government has not breached its duty to the public in consenting to the decree.  The court is required to determine not whether a particular decree is the one that will best serve society, but whether the settlement is "*within the reaches of the public interest*."  More elaborate requirements might undermine the effectiveness of antitrust enforcement by consent decree.

*Bechtel*, 648 F.2d at 666 (emphasis added) (citations omitted).[1]

In determining whether a proposed settlement is in the public interest, a district court "must accord deference to the government's predictions about the efficacy of its remedies, and may not require that the remedies perfectly match the alleged violations." *SBC Commc'ns*, 489 F. Supp. 2d at 17; *see also U.S. Airways*, 38 F. Supp. 3d at 74-75 (noting that a court should not reject the proposed remedies because it believes others are preferable and that room must be made for the government to grant concessions in the negotiation process for settlements); *Microsoft*, 56 F.3d at 1461 (noting the need for courts to be "deferential to the government's predictions as to the effect of the proposed remedies"); *United States v. Archer-Daniels-Midland Co.*, 272 F. Supp. 2d 1, 6 (D.D.C. 2003) (noting that the court should grant "due respect to the government's prediction as to the effect of proposed remedies, its perception of the market structure, and its views of the nature of the case").  The ultimate question is whether "the

---

[1] See also BNS, 858 F.2d at 464 (holding that the court's "ultimate authority under the [APPA] is limited to approving or disapproving the consent decree"); United States v. Gillette Co., 406 F. Supp. 713, 716 (D. Mass. 1975) (noting that, in this way, the court is constrained to "look at the overall picture not hypercritically, nor with a microscope, but with an artist's reducing glass").

8

remedies [obtained in the decree are] so inconsonant with the allegations charged as to fall outside of the 'reaches of the public interest.'" *Microsoft*, 56 F.3d at 1461 (*quoting United States v. Western Elec. Co.*, 900 F.2d 283, 309 (D.C. Cir. 1990)).  To meet this standard, the United States "need only provide a factual basis for concluding that the settlements are reasonably adequate remedies for the alleged harms." *SBC Commc'ns*, 489 F. Supp. 2d at 17.

Moreover, the court's role under the APPA is limited to reviewing the remedy in relationship to the violations that the United States has alleged in its complaint, and does not authorize the court to "construct [its] own hypothetical case and then evaluate the decree against that case." *Microsoft*, 56 F.3d at 1459; *see also U.S. Airways*, 38 F. Supp. 3d at 75 (noting that the court must simply determine whether there is a factual foundation for the government's decisions such that its conclusions regarding the proposed settlements are reasonable); *InBev*, 2009 U.S. Dist. LEXIS 84787, at *20 ("the 'public interest' is not to be measured by comparing the violations alleged in the complaint against those the court believes could have, or even should have, been alleged").  Because the "court's authority to review the decree depends entirely on the government's exercising its prosecutorial discretion by bringing a case in the first place," it follows that "the court is only authorized to review the decree itself," and not to "effectively redraft the complaint" to inquire into other matters that the United States did not pursue.  *Microsoft*, 56 F.3d at 1459-60.

In its 2004 amendments to the APPA,[2] Congress made clear its intent to preserve the practical benefits of utilizing consent decrees in antitrust enforcement, adding the unambiguous

---

[2] The 2004 amendments substituted "shall" for "may" in directing relevant factors for a court to consider and amended the list of factors to focus on competitive considerations and to address potentially ambiguous judgment terms. *Compare* 15 U.S.C. § 16(e) (2004), *with* 15 U.S.C. § 16(e)(1) (2006); *see also SBC Commc'ns*, 489 F. Supp. 2d at 11 (concluding that the 2004 amendments "effected minimal changes" to Tunney Act review).

9

instruction that "[n]othing in this section shall be construed to require the court to conduct an evidentiary hearing or to require the court to permit anyone to intervene."  15 U.S.C. § 16(e)(2); *see also U.S. Airways*, 38 F. Supp. 3d at 76 (indicating that a court is not required to hold an evidentiary hearing or to permit intervenors as part of its review under the Tunney Act).  This language explicitly wrote into the statute what Congress intended when it first enacted the Tunney Act in 1974.  As Senator Tunney explained:  "[t]he court is nowhere compelled to go to trial or to engage in extended proceedings which might have the effect of vitiating the benefits of prompt and less costly settlement through the consent decree process."  119 Cong. Rec. 24,598 (1973) (statement of Sen. Tunney).  Rather, the procedure for the public interest determination is left to the discretion of the court, with the recognition that the court's "scope of review remains sharply proscribed by precedent and the nature of Tunney Act proceedings."  *SBC Commc'ns*, 489 F. Supp. 2d at 11.  A court can make its public interest determination based on the competitive impact statement and response to public comments alone.  *U.S. Airways*, 38 F. Supp. 3d at 76. *See also United States v. Enova Corp.*, 107 F. Supp. 2d 10, 17 (D.D.C. 2000) (noting that the "Tunney Act expressly allows the court to make its public interest determination on the basis of the competitive impact statement and response to comments alone"); S. Rep. No. 93-298 93d Cong., 1st Sess., at 6 (1973) ("Where the public interest can be meaningfully evaluated simply on the basis of briefs and oral arguments, that is the approach that should be utilized.").

## VIII.   DETERMINATIVE DOCUMENTS

There are no determinative materials or documents within the meaning of the APPA that were considered by the United States in formulating the proposed Final Judgment.

Date:   June 10, 2019                    Respectfully submitted,


                                         /s/ Kenneth A. Libby
                                         Kenneth A. Libby
                                         Special Attorney
                                         U.S. Department of Justice
                                         Antitrust Division
                                         c/o Federal Trade Commission
                                         600 Pennsylvania Avenue, NW
                                         Washington, DC 20580
                                         Phone: (202) 326-2694
                                         Email: klibby@ftc.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| *Plaintiff*, | |
| v. | Civil Action No. |
| CANON INC. | |
| and | |
| TOSHIBA CORPORATION | |
| *Defendants*. | |

## UNITED STATES' EXPLANATION OF CONSENT DECREE PROCEDURES

The United States submits this short memorandum summarizing the procedures regarding the Court's entry of the proposed Final Judgment. This Judgment would settle this case pursuant to the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16(b)-(h) (the "APPA"), which applies to civil antitrust cases brought and settled by the United States.

1.  Today, the United States has filed a Complaint and, attached to this Explanation of Consent Decree Procedures, a proposed Final Judgment and a Stipulation between the parties by which they have agreed that the Court may enter the proposed Final Judgment after the United States has complied with the APPA. The United States has also filed a Competitive Impact Statement relating to the proposed Final Judgment.

2.  The Stipulation is a document that has been agreed to by both the United States and the Defendants.

1

3.   In cases in which the APPA applies, it requires that the United States publish the proposed Final Judgment and the Competitive Impact Statement in the *Federal Register* and cause to be published a summary of the terms of the proposed Final Judgment and the Competitive Impact Statement in certain newspapers at least sixty (60) days prior to entry of the proposed Final Judgment. The Defendants in this matter have agreed to arrange and bear the costs for the newspaper notices. The notice will inform members of the public that they may submit comments about the proposed Final Judgment to the United States Department of Justice, Antitrust Division, 15 U.S.C. § 16(b)-(c).

4.   During the sixty-day period, the United States will consider, and at the close of that period respond to, any comments that it has received, and it will publish the comments and the United States' responses in the *Federal Register.*

5.   After the expiration of the sixty-day period, the United States will file with the Court the comments and the United States' responses, and it may ask the Court to enter the proposed Final Judgment (unless the United States has decided to withdraw its consent to entry of the Final Judgment, as permitted by Paragraph (1) of the Stipulation, *see* 15 U.S.C. § 16(d)).

6.   If the United States requests that the Court enter the proposed Final Judgment after compliance with the APPA, 15 U.S.C. § 16(e)-(f), then the Court may enter the Final Judgment without a hearing, provided that it concludes that the Final Judgment is in the public interest.

Dated:  June 10, 2019                                    Respectfully submitted,


                                                         /s/ Kenneth A. Libby
                                                         Kenneth A. Libby
                                                         Daniel J. Matheson
                                                         D.C. Bar No. 502490
                                                         Jennifer Lee
                                                         Special Attorneys
                                                         U.S. Department of Justice
                                                         Antitrust Division
                                                         c/o Federal Trade Commission
                                                         600 Pennsylvania Avenue, NW
                                                         Washington, DC 20580
                                                         Phone: (202) 326-2694
                                                         Email: klibby@ftc.gov